**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ENAS A.,[1] | |
| Plaintiff, | CIVIL NO. 1:24-cv-1480 |
| v. | (LATELLA, M.J.) |
| FRANK BISIGNANO,[2] | |
| Defendant. | |

# MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano*, Commissioner of Social Security, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. He has been automatically substituted in place of the original defendant, Martin O'Malley. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

Commissioner") denying Plaintiff Enas A.'s claims for a period of disability and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act. For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be vacated and remanded for further consideration.

## 1. Background and Procedural History

On January 17, 2019, Plaintiff Enas A. ("Mr. A.") filed applications for Title II and Title XVI benefits, respectively. (Doc. 7-5 at 2, 8)[3]. In these applications, Mr. A. claimed disability beginning December 1, 2017. (*Id.*). The Social Security Administration initially denied Mr. A.'s claims on March 13, 2019. (Doc. 7-3 at 24-25). Mr. A. filed a request for a hearing before an Administrative Law Judge and ALJ Richard Guida conducted the requested hearing on December 18, 2019. (Doc. 7-2 at 29).

[3] For the sake of clarity, we refer in all instances to the ECF document numbers and pagination.

In a written opinion dated January 22, 2020, the ALJ determined that Mr. A. is not disabled and therefore not entitled to the benefits sought. (Doc. 7-2 at 24). Mr. A. appealed the ALJ's decision to the Appeals Council, who, on October 27, 2020, denied Mr. A.'s request for review. (Doc. 7-2 at 2).

Plaintiff appealed that decision to the United States District Court for the Middle District of Pennsylvania. (Doc. 7-9 at 26). On March 3, 2022, Chief Judge Matthew W. Brann issued an Order remanding the matter for further consideration of Plaintiff's mental impairments. *Anderson v. Kijakazi*, No. 3:20-CV-02452 (Doc. 19). ALJ Guida conducted a second hearing on March 20, 2024. (Doc. 7-8 at 36). On May 6, 2024, ALJ Guida issued a second opinion, again finding that Plaintiff was not under a disability from December 1, 2017 through October 30, 2021. (Doc. 7-8 at 13).

On September 3, 2024, Mr. A. filed the instant action. (Doc. 1). The parties consented to proceed before a federal magistrate judge on

September 10, 2024. (Doc. 5)[4]. The Commissioner responded on October 31, 2024, providing the requisite transcripts from the disability proceedings. (Doc. 6; Doc. 7). The parties then filed their respective briefs (Doc. 10; Doc. 14; Doc. 17), with Mr. A. alleging 3 errors warranting reversal or remand. (Doc. 10 at 1).

**2. THE ALJ'S DECISION**

In a decision dated May 6, 2024, the ALJ determined Mr. A. "has not been under a disability, as defined in the Social Security Act, from December 1, 2017, through the date of this decision." (Doc. 7-8 at 13). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520. The ALJ determined that Mr. A. met the insured status requirements of the Social Security Act through March 31, 2026. (Doc. 7-8 at 8).

---

[4] On June 18, 2026, we entered a notice informing the parties of our intent to continue to exercise the jurisdiction previously consented to absent any express objection. (Doc. 18). No such objections were filed.

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b); 416.920. SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. §§ 404.1572; 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. §§ 404.1574; 416.974. The ALJ determined Mr. A. "did not continuously engage in substantial gainful activity from December 1, 2017, the alleged onset date, through December 30, 2021." (Doc. 7-8 at 8). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe

impairment and [is], therefore, not disabled." 20 C.F.R. §§ 404.1520(c); 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found Mr. A. has the following severe impairments: anxiety disorder; mild intellectual disability; and major depressive disorder. (Doc. 7-8 at 8).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii); 416.920(a)(4)(iii). The ALJ determined that none of Mr. A.'s impairments, considered individually or in combination, met or equaled a Listing. (Doc. 7-8 at 8). Specifically, the ALJ considered Listing 12.04, Depressive, Bipolar, and Related Disorders, 12.05, Intellectual Disorders, and 12.06, Anxiety and Obsessive-Compulsive Disorders. (Doc. 7-8 at 8-10).

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the

medical evidence provided. The ALJ determined that Mr. A. has the residual functional capacity to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant was limited to simple and routine tasks, involving only simple, work-related decisions.

(Doc. 7-8 at 10).

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 5 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b); 416.960(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step. The ALJ determined that Mr. A. has no past relevant work. (Doc. 7-8 at 12).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

The ALJ made vocational determinations that Mr. A. was 20 years old on the alleged onset date, defined as a younger individual age 18-49 by the Regulations. 20 C.F.R. §§ 404.1563; 416.963. (Doc. 7-8 at 12). The ALJ also noted that Mr. A. "has at least a high school education" as considered in 20 C.F.R. §§ 404.1564; 416.964. (Doc. 7-8 at 12). The ALJ determined that upon consideration of these factors, Mr. A.'s RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Doc. 7-8 at 13). The ALJ specifically identified occupations of housekeeper, router, and cafeteria attendant. (*Id.*).

As a result of this analysis, the ALJ determined that Mr. A. was not disabled and denied Mr. A.'s applications for benefits. (Doc. 7-8 at 13-14).

### 3. STANDARD OF REVIEW

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her

RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); 20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence “does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may

be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Mr. A. is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d

533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## 4. DISCUSSION

Mr. A. alleges 3 errors that he claims merit reversal or remand. First, he claims that the ALJ erred in failing to include pace limitations in his RFC. Second, he argues that the ALJ failed to properly evaluate the opinion of S. Trogner, Psy.D., the Consultative Examiner. Third, he claims the ALJ erred in relying on outdated mental health assessments. We will first consider his argument regarding the ALJ's omission of a pace limitation.

### A. THE OMISSION OF A PACE LIMITATION IN THE RFC

Plaintiff first argues that notwithstanding the ALJ's finding that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace, he failed to include any pace-related limitation in the RFC. (Doc. 10 at 7). Plaintiff argues that based upon the exact same medical evidence, the ALJ previously included a limitation that Plaintiff could perform no production pace work. (Doc. 10 at 7). Plaintiff argues that this error was not harmless. (*Id.* at 9-10). He cites the descriptions for each identified occupation and claims that the

"descriptions do not describe a person who works at their own pace, but rather someone who must keep up with a rate set by external forces." (*Id*. at 10).

In response, the Commissioner argues that substantial evidence supports the ALJ's omission of a pace-related limitation. (Doc. 14 at 14). The Commissioner notes that the ALJ considered the entire record and included a "valid explanation" of his decision relating to the mental RFC. (*Id*. at 16). Further, the Commissioner notes that "even assuming arguendo" that the ALJ erred in omitting a pace-related limitation, Plaintiff's argument still fails because "[h]is contention that the jobs relied upon at step five are production-rate jobs is nothing more than speculation." (Doc. 14 at 16). The Commissioner adds that the ALJ was not bound by findings from a prior decision, which was vacated. (*Id*. at 17).

In *Hess v. Commissioner of Social Security*, the Third Circuit explained that no specific "incantations are required at steps four and five simply because a particular finding has been made at steps two and three," such as a finding that a claimant has a moderate difficulty with concentration, persistence or pace. 931 F.3d 198, 209 (3d Cir. 2019).

That is because those portions of the disability analysis serve distinct purposes. *Id.* With respect to mental impairments, the functional limitation categories are "used to rate the severity of mental impairment(s)[.]" *Id.* (quoting SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996)). An RFC on the other hand, while related to the limitation findings, reflects "the most [a claimant] can still do despite [his] limitations" and "requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories[.]" *Id.* (quoting SSR 96-8P, at *2-4).

The statement of a limitation does need to reflect the claimant's particular impairments, including those embodied in the functional limitation findings. *Id.* "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' " *Id.* (quoting SSR 96-8P at *5; *see also* 20 C.F.R. §§ 404.1545(c), 416.945(c) (explaining that a mental RFC assessment must begin with an examination of "the nature and extent of [the claimant's] mental limitations and restrictions")).

More specifically, the Third Circuit held that in instances where an ALJ has found that a claimant has "moderate" difficulties in "concentration, persistence, or pace," an ALJ's inclusion of a limitation to "simple tasks" can be said to fairly reflect the claimant's impairments so long as the ALJ provides a "valid explanation." *Hess*, 931 F.3d at 210. While there is no particular formulation required, courts have held that "[a]n ALJ offers a valid explanation of a mental RFC when the ALJ highlights factors such as 'mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, ....'" *Domasiewicz v. Bisignano*, No. 4:24-CV-1550, 2026 WL 1122606, at *9 (M.D. Pa. Apr. 24, 2026) (citing *Hess*, 931 F.3d at 214; *see also Shaffer v. Colvin*, No. 13-925, 2014 WL 4925067, at *5 (W.D. Pa. Sept. 30, 2014) ("It is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and other relevant evidence."); *McCafferty v. Astrue*, No. 07-3641, 2008 WL

1869282, at *4 (E.D. Pa. Apr. 25, 2008) (finding that the requirements of SSR 96-8p were satisfied by ALJ's narrative discussion of the claimant's functional limitations in the context of the objective medical evidence, doctors' notes and opinions, the claimant's activities of daily living, and the claimant's subjective complaints).

Here, at step three, the ALJ found that Plaintiff has a moderate limitation with regard to concentrating, persisting or maintaining pace. (Doc. 7-8 at 8). The ALJ noted that Mr. A.'s mother stated that his conditions affect his concentration. (*Id*. at 9). The ALJ noted, however, that Dr. Trogner indicated on March 5, 2019 that Plaintiff had coherent and goal directed thought processes. (*Id*.).

The ALJ then indicated that "from December 1, 2017 through October 30, 2021, [Mr. A.] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Mr. A.] was limited to simple and

routine tasks, involving only simple, work-related decisions.[5] (Doc. 7-8 at 10).

While discussing the formulation of the RFC, the ALJ acknowledged Plaintiff's allegations that he has poor short-term memory and his mother's testimony that his conditions affect his memory and concentration. (*Id*. at 11). The ALJ referenced Dr. Trogner's notation that Plaintiff has short-term memory deficits. (*Id*.). However, the ALJ stated that Dr. Trogner also observed that Plaintiff had "good and age appropriate attention." (*Id*. at 12). The ALJ indicated that he found Dr. Plowman's March 13, 2019 Psychiatric Review Technique and Mental Residual Functional Capacity Assessment persuasive, noting that Dr. Plowman opined that Mr. A.

---

[5] It bears mentioning that the ALJ included a limitation for production pace in the previous decision. (*See* R. 7-2 at 19). While the Commissioner is correct that a vacated and remanded decision has no preclusive effect, *see Demaio v. Berryhill*, No. 15-5187, 2017 WL 4618749 at *4 (D.N.J. Oct. 13, 2017), because that decision was based upon the same record, we question the ALJ's rationale in omitting such a limitation in the second decision without a corresponding explanation for doing so.

has "no worse than moderate limitations." (*Id.*). Finally, the ALJ noted that Dr. Trogner opined that Mr. A.'s attention and concentration and recent and remote memory skills are only mildly impaired. (*Id.*). However, the ALJ included that notation after indicating that he found Dr. Trogner's opinions *not* persuasive. (*Id.*).

Unfortunately, we are unable to say that this discussion constitutes a valid explanation for omitting a concentration or pace limitation in Plaintiff's RFC. Plaintiff's difficulties with concentration and pace are well-documented in the record. On March 5, 2019, Dr. Trogner documented that Plaintiff reported that he has been unable to work due to, among other things, "doing tasks very slow and being criticized for it on job sites." (Doc. 7-7 at 18, 22).

Similarly, on March 13, 2019, Dr. Plowman indicated that Plaintiff has "sustained concentration and persistence limitations." (Doc. 7-3 at 9). Dr. Plowman then further specified that Mr. A. is moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, and work in coordination

with or in proximity to others without being disrupted by them. (*Id.* at 9).

On October 27, 2021, James Rossi, CRNP performed a psychiatric evaluation and noted that Plaintiff reported trouble concentrating on things "[m]ore than half the days" and moving or speaking so slowly that other people could have noticed or being so fidgety or restless "[n]early every day." (Doc. 7-13 at 283).

In light of this evidence in the record, the ALJ's sparse discussion of Mr. A.'s moderate limitation in concentration, persistence and pace is insufficient to explain the decision to include only a limitation for simple tasks. As in *Rolon-Torres v. Kijakazi*, "[h]ere there is no 'coupling' of a discussion of the claimant's activities of daily living with the capacity to do simple tasks." No. 22-CV-00223-RAL, 2023 WL 2244684, at *7 (E.D. Pa. Feb. 27, 2023). Nor is there language about progress notes that reflect "no serious problems in this area of functioning," as in *Hess*. *Id.* Likewise, there is no mention by the ALJ of the observed ability to complete work tasks without problems, as in *Hess*. *Id.* (citing *Hess,* 931 F.3d at 214). Rather, the only basis to infer the omission of a pace-related limitation is the ALJ's reference to Dr.

Trogner's findings that Mr. A. has "good and age appropriate attention" and that his attention and concentration are only mildly impaired. (Doc. 7-8 at 12). This explanation, while meager at best, is further clouded by the fact that the ALJ concluded that Dr. Trogner's opinions were not persuasive.[6] (Doc. 7-7 at 12). We are, therefore, unable to conclude that substantial evidence supports the ALJ's limitation to "simple tasks" rather than any specific limitation relating to concentration or pace.

Mr. A. maintains that this was not harmless error because the jobs identified at step five "appear to be inconsistent with a production-rate job." (Doc. 10 at 9). The Commissioner responds by arguing that this contention is nothing more than speculation. (Doc. 14 at 16). While we appreciate that argument, we are afraid it cuts both ways. Unfortunately, in the absence of a hypothetical presented to a VE, we

---

[6] We add that our difficulty in tracing the ALJ's logic in omitting a pace-related limitation is compounded by the fact that he found Dr. Plowman's assessment persuasive but failed to discuss Dr. Plowman's concentration and pace-related findings. (*See* Doc. 7-8 at 12).

lack sufficient information to determine whether the identified positions are consistent or inconsistent with a pace limitation. "Because the RFC was defective, the hypothetical upon which the vocational expert relied was also defective, meaning that the VE's testimony in response to the hypothetical did not count as substantial evidence in support of the ALJ's decision." *Rolon-Torres*, 2023 WL 2244684, at *8; *see also Sawyer v. Berryhill,* 305 F. Supp. 3d 664, 671 (E.D. Pa. 2018) ("The Court is not a vocational expert and is thus not in a position to impute reasons why the ALJ did not include this limitation in his hypothetical or whether his failure to do so is harmless in this case."). Remand is therefore appropriate.

B. MR. A.'S REMAINING ARGUMENTS

Because we conclude that the ALJ's RFC assessment is not supported by substantial evidence, and will vacate and remand the decision of the Commissioner for further consideration, we decline to address Mr. A.'s remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Mr. A.'s additional contentions would be futile given that

the ALJ's decision concerning Mr. A.'s RFC assessment may yield a different result.

**5. CONCLUSION**

Based on the foregoing and pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision to deny Mr. A. disability benefits will be vacated and remanded. An appropriate order follows.

Dated: September 18, 2026

s/ Leo A. Latella
**LEO A. LATELLA**
**United States Magistrate Judge**